**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALEXANDRIA DYESS, by and through her Guardian ad Litem, ANDREA DYESS,<br><br>Plaintiff,<br><br>v.<br><br>TEHACHAPI UNIFIED SCHOOL DISTRICT, et al.,<br><br>Defendants. | NO. 1:10-CV-00166-AWI-JLT<br><br>ORDER ON DEFENDANT COTTA'S MOTION TO DISMISS<br><br>Doc. Nos. 12 & 14 |

This case was removed from Kern County Superior Court on the basis of federal question jurisdiction. Plaintiff Alexandria Dyess ("Alexandria"), through her guardian ad litem, alleges five claims for relief against Tehachapi Unified School District ("TUSD") and its employees Rick Cotta ("Cotta"), Ed Cheek ("Cheek"), Cary Johnson ("Johnson"), Beverly Thompson ("Thompson"), Richard Swanson ("Swanson"), Ms. Skaggs ("Skaggs"), Dan Ingraham ("Ingraham"), and Ms. Guy ("Guy").[1] Alexandria's claims stem from conduct by her former teacher Cotta and the defendants' reaction to Cotta's conduct. Defendant Cotta moves to dismiss several causes of action alleged against him under Fed. R. Civ. P. 12(b)(6). For the reasons that

---

[1] The Court will refer to Cheek, Johnson, Thompson, Swanson, Skaggs, Ingraham, and Guy collectively as "Individual Defendants."

follow, Cotta's motion will be granted.

## BACKGROUND

From the FAC,[2] during the 2007-2008 school year: Alexandria was a student at Tehachapi High School ("the School"), Johnson was the principal of the School, Cheek and Thompson were Vice Principals of the School, Swanson was the Superintendent of TUSD, Cotta was a teacher, (who apparently taught Introduction to Agriculture) at the School, Skaggs, Ingraham, and Guy, were teachers at the School.  See FAC ¶¶4-15.

Alexandria alleges that prior to the date she was first sexually harassed by Cotta, Cotta had engaged in prior misconduct toward, or sexual harassment of, students, and particularly female students.  See FAC ¶17.  In December 2007, during Cotta's Introduction to Agriculture class, Alexandria was checking her grades at the back of the classroom, when Cotta approached Alexandria and placed his right hand across the front of Alexandria's body to her lower left hip and his left hand on her lower right hip, spun her around, and pulled Alexandria against his body.  See FAC ¶24.  Cotta then placed his forehead on her forehead.  Id.  Alexandria attempted to step back, and Cotta forcefully pulled her against his body.  Alexandria pushed Cotta away and Cotta stated: "You touch me like that again and I will send you to the office for assault on a teacher."  Id.

In January 2008, during Cotta's Introduction to Agriculture class, Cotta grabbed Alexandria from behind, placed his arms around her, under her arms, and placed his hands on her chest and breasts.  Id. at ¶25.  Alexandria turned around, pushed him away, and said "Stop, how many times do I have to tell you not to touch me," or words to that effect.  Cotta became visibly angry but eventually retreated to his office.  Id.

Later during January 2008, Cotta's Introduction to Agriculture class was canceled and

---

[2]Since this is a Rule 12(b)(6) motion, the Court accepts as true the factual allegations in the FAC.  See Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999).

Alexandria was transferred to Guy's Earth Science class. Id. at ¶26. Cotta would "hang out" in Guy's Earth Science class "in order to view, ogle and leer at Plaintiff." Id. Alexandria alleges that Guy did not report Cotta's conduct to law enforcement, TUSD, the School, or any other teacher.

Later in January 2008, Alexandria attended an event for the School's Future Farmers of America ("FFA"). Id. at ¶27. Approximately one day prior to the FFA trip, Alexandria, Brittney Ryan ("Ryan"), Brooke Broyles ("Broyles"), Amanda Ward ("Ward"), went to Ingraham and requested that they ride with him because they were uncomfortable with Cotta. Id. During a stop at an ice cream parlor after the event, Cotta took photographs of only the female FFA participants, including Ryan, Broyles, Ward, and Alexandria. Cotta "photographed the girls when they were bending over, when they were eating cherries, and under the table." Id. The females students asked Cotta to stop taking the photographs. Id. Cotta became angry and refused to stop taking the photographs. Id. Cotta then said that he wanted the females to ride in his van with him. Id. The female students instead rode with Ingraham, another teacher who was accompanying the trip. Id. Ingraham witnessed Cotta's behavior and did not report Cotta's conduct and did not report Alexandria and the other female students' concerns of Cotta to either TUSD, the School, or any teacher. Id.[3]

During February 2008, Alexandria was in a School office that Cotta shared with Ingraham. Id. at ¶28. Cotta entered the office, grabbed, and squeezed Alexandria's arm, and shook her violently, leaving a bruise on her arm Id. Cotta again tried to touch Alexandria and Alexandria said "Don't touch me, don't you get it, I'm not comfortable around you." Id. Ingraham witnessed Cotta's actions and did not report Cotta's conduct to anyone. Id.

---

[3]Johnson later confirmed and corroborated that Cotta had taken photographs of the female FFA students but did not investigate whether the photographs had been taken in an inappropriate manner or whether Cotta had asked just the girls to ride in his van. See FAC ¶28.

3

On or about February 13, 2008, James Dyess[4], Alexandria's father, saw the bruise on Alexandria's arm and asked how she got the bruise. Id. at ¶30. Alexandria told her father for the first time that Cotta had grabbed and bruised her arm. Id. That afternoon, James asked Cheek to investigate the incident and Cheek said that he would look into it. Id.

On or about, February 14, 2008, James asked Cheek if had spoken to Cotta about the bruised arm incident. Id. at ¶31. Cheek said that he had not, but would do so "later that evening." Id. On or about February 19, 2008, Cheek informed Alexandria that she was suspended from school for the rest of the week because of a purported incident the prior week, when Alexandria had allegedly argued with two other students. Id. at ¶32. Later that day, James asked Cheek about the suspension and whether the other two students had been suspended. Cheek told James that it was none of his business. Id. James asked Cheek if he had spoken to Cotta. Id. Cheek said that he had not. Id. James asked to speak with Johnson and Cheek told James that Johnson was gone for the day. Id.

On or about February 20, 2008, James spoke with Johnson and told him about Alexandria's suspension. Id. at ¶33. Johnson responded that he had told Cheek to suspend all three students and asked Cheek if he had done so. Id. Cheek said "not yet." Id. James then told Johnson that Alexandria had told him about several incidents of sexual harassment involving Cotta. Id. The FAC alleges that James had told Cheek about the sexual harassment and that Cheek responded that he had not spoken to Cotta yet.[5] Id. Johnson told James that Alexandria needed to fill out a complaint form against Cotta. Id. Later that day, James turned in the completed form to Cheek. Id. James told Johnson that he had just given the form to Cheek. Id. Johnson said that he would look into it and get back to James. Id.

---

[4] James is employed as a custodian at the School. See FAC ¶5.

[5] The Court is not able to find an allegation that James told Cheek about the sexual harassment. There is an allegation, however, that James told Cheek about the bruised arm incident. See FAC ¶30.

4

On or about April 4, 2008, James had not heard anything about the complaint against Cotta. Id. at ¶34. James emailed Johnson to inquire about the investigation. Id. On or about April 14, 2008, Johnson said that he had never received the complaint form but that he and Cheek had spoken with Cotta and that Cotta's "story was different from [Alexandria's']. Id. at ¶35.

On or about April 15, 2008, James emailed Swanson and informed him that: (1) Alexandria had submitted a complaint form against Cotta on February 20, 2008, for inappropriate touching and sexually harassing Alexandria; (2) on April 14, 2008, James emailed Johnson asking for a response; (3) on April 15, 2008, Johnson responded that he had never received the complaint form, but that he had spoken with Cotta and he had a different story than Alexandria; and (4) James requested a meeting with Swanson. Id. at ¶36.

On or about April 16, 2008, James and Alexandria met with Swanson and told him what had happened to Alexandria and the handling of her complaint. Id. at ¶37. Swanson said he would respond within twenty-four hours. Id.

On or about April 16, 2008, Alexandria met with Johnson and Thompson. Id. at ¶38. Johnson told Alexandria that his office had lost her complaint form but had just found it. Id. Alexandria told Johnson and Thompson about what Cotta had done to her. Id. Thompson told Alexandria that she was misunderstanding what Cotta had done and that Cotta was a nice man and was not going to hurt her. Id.

On or about April 18, 2008, Johnson told James that Cotta had admitted to grabbing Alexandria and resting his forehead against her forehead. Id. at ¶39. Johnson said that Cotta was in a lot of trouble and that paperwork was being drawn up and that he thought the matter had already been handled.

During the week of April 21, 2008, James informed Swanson that Cotta was still on campus and was still harassing Alexandria. Id. at ¶40. Swanson told James that Cotta was still

5

on campus because there was an appeals phase. Id. In late April 2008, James told Johnson about another incident involving Cotta and Alexandria. Id. at ¶41. James told Johnson that while Alexandria was passing Cotta in the hallway, Cotta raised both of his arms in the air and said "See, I'm not touching you." Id. Johnson said that he spoke to Cotta "who described the incident very differently." Id.

On or about May 8, 2009, James contacted the United States Department of Education, Office of Civil Rights ("OCR") about the sexual harassment. Id. at ¶44. On or about May 27, 2008, James sent an email to each member of the School Board of TUSD and informed them about the sexual harassment and the failure of defendants to appropriately respond to the sexual harassment. Id. at ¶45. James did not receive a response to his email. Id.

After James brought the sexual harassment to the further attention of TUSD and the School, teachers and other employees of TUSD and/or the School, including but not limited to Defendant Skaggs, said sexually discriminatory and harassing statements to Alexandria, including "Don't hug your students around Dyess or they will accuse you of sexual assault." Id. at ¶46. Teachers and employees made sexually harassing comments that Alexandria wore "low cut tops." Id. Alexandria was subjected to repeated student-on-student sexual harassment, including statements that Alexandria was a "whore," "a slut," that she "asked for it," and that she led [Cotta] on." Id. at ¶47.

On July 30, 2009, the OCR issued a letter that stated that it had determined that there was sufficient evidence to support a conclusion that Alexandria was subjected to sexual harassment by Cotta and that TUSD had failed to respond appropriately and effectively to the notice of harassment. Id. at ¶49. The OCR stated that the evidence demonstrated a pattern of sexual harassment that was sufficiently serious to create a hostile environment for female students, including Alexandria, in violation of Title IX, and that TUSD's response to notice of harassment was not in compliance with Title IX. Id. The OCR investigation additionally determined, and

Alexandria alleges, that "almost all of the four female and two male students who were interviewed by OCR (not including Alexandria) reported that they themselves had experienced some form of unwanted physical contact from Defendant Rick Cotta...." See FAC ¶50. A male student told OCR that Cotta sometimes touched his back, and that he told Cotta to get his hands off of him. Id.

Alexandria filed this lawsuit in Kern County Superior Court on November 6, 2009. Defendants removed on February 2, 2010. In her FAC, Alexandria alleges the following claims for relief: (1) Failure to prevent teacher-on-student sexual harassment and student-on-student sexual harassment in violation of Title IX of the Education Amendments Act against TUSD; (2) Violation of Equal Protection Clause of the Fourteenth Amendment and Title IX against Cotta and Individual Defendants, in their individual capacities; (3) Excessive Use of Force in violation of the Fourth Amendment against Cotta, Cheek, Johnson, Thompson, and Swanson; (4) Civil Conspiracy under 42 U.S.C. Section 1983 ("§1983") against Individual Defendants; and (5) Conspiracy under 42 U.S.C. Section 1985(3) ("§1985(3)")  and Failure to Prevent under 42 U.S.C. Section 1986 (("§1986") against Individual Defendants.

On April 2, 2010, Cotta filed a Motion to Dismiss the FAC for failure to state a claim pursuant to Rule 12(b)(6) and a Motion to Strike certain portions of the FAC pursuant to Rule 12(f).[6]

On April 26, 2010, Alexandria filed an opposition to Cotta's Motion to Dismiss and Motion to Strike. On May 3, 2010, Cotta filed a reply.

---

[6] Cotta seeks to strike paragraphs 49 and 50 of the FAC pursuant to Rule 12(f). These paragraphs contain allegations of the OCR investigation. Alexandria has adopted the OCR's findings and incorporated them by reference. See FAC ¶50. Cotta argues that if the OCR allegations are asserted for their truth, then the allegations are redundant and should be stricken. The Court finds that Alexandria is seeking to assert these paragraphs for their truth. Cotta's argument has no merit, however, because the OCR paragraphs contain additional facts and allegations that are not contained in the remainder of the FAC. Accordingly, Cotta's Motion to Strike is denied.

# GENERAL LEGAL FRAMEWORK

## Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999). The Court must also assume that general allegations embrace the necessary, specific facts to support the claim. Smith v. Pacific Prop. and Dev. Corp., 358 F.3d 1097, 1106 (9th Cir. 2004); Peloza v. Capistrano Unified Sch. Dist., 37 F.3d 517, 521 (9th Cir. 1994). But, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). Although they may provide the framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009); see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). Furthermore, Courts will not assume that plaintiffs "can prove facts which [they have] not alleged, or that the defendants have violated . . . laws in ways that have not been alleged." Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court has explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his

> 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Thus, to "avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 129 S.Ct. at 1949; see Twombly, 550 U.S. at 570; see also Weber v. Department of Veterans Affairs, 521 F.3d 1061, 1065 (9th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949.

> The plausibility standard is not akin to a 'probability requirement,' but it asks more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'
> . . .
> Determining whether a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.

Iqbal, 129 S.Ct. at 1949-50. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

If a Rule 12(b)(6) motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). In other words, leave to amend need not be granted when amendment would be futile. Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).

**ANALYSIS**

I.  Second Claim for Relief - Violation of Equal Protection Clause of the Fourteenth Amendment and Title IX[7]

Title IX

Cotta's Argument

Cotta argues that Alexandria's Title IX claim fails against him because Title IX does not authorize suits against school officials or teachers.

Alexandria's Opposition

Alexandria appears to concede that a Title IX action is not cognizable against school officials or teachers and focuses her opposition on her Equal Protection claim.[8]

Resolution

Although, the FAC asserts a Title IX claim against Cotta, a Title IX claim cannot be brought against school officials, teachers, and other individuals. See Fitzgerald v. Barnstable School Committee, 129 S. Ct. 788, 796 (2009); Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ., 526 U.S. 629, 641 (1999) ("The Government's enforcement power may only be exercised against the funding recipient, see [20 U.S.C.] § 1682, and we have not extended damages liability under Title IX to parties outside the scope of this power."). Accordingly, Alexandria's Title IX claim is dismissed with prejudice as to Cotta.

---

[7]Alexandria's First Claim for Relief is only brought against Defendant TUSD. Cotta is not challenging the Third Claim for Relief.

[8]Alexandria argues that a Title IX claim lies against Cotta under the Equal Protection Clause of the Fourteenth Amendment. The Court is not entirely clear as to Alexandria's argument. To the extent that Alexandria is arguing that she can assert a Title IX claim through the Equal Protection Clause, the Court is not persuaded. A Title IX claim under 20 U.S.C. § 1681 is enforceable through an implied private right of action as discussed in the legal standard section. In contrast, a constitutional Equal Protection claim can be asserted through 20 U.S.C. § 1983. See Flores v. Morgan Hill Unified Sch. Dist., 324 F.3d 1130, 1135 (9th Cir. 2003).

<u>Equal Protection Claim Pursuant to U.S.C. 42 §1983 - Gender Based Discrimination</u>

<u>Cotta's Argument</u>

Cotta does not address Alexandria's §1983 claim under the Equal Protection Clause. However, the Court must address this claim in order to resolve Alexandria's §1983, §1985(3), and §1986 claims.

<u>Alexandria's Argument</u>

Alexandria alleges that Cotta acted under color of state law and discriminated against her on the basis of her sex in violation of the Equal Protection Clause and that such discrimination was intentional and deliberate.

<u>Resolution</u>

The Fourteenth Amendment provides that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amendment XIV, §1. Denials by any person acting under color of state law are actionable under §1983. In order to establish a §1983 equal protection violation, the plaintiff must show that the individual defendants, acting under color of state law, discriminated against her as a member of an identifiable class and that the discrimination was either intentional or occasioned by deliberate indifference. <u>Flores v. Morgan Hill Unified Sch. Dist.</u>, 324 F.3d 1130, 1135 (9th Cir. 2003). "Deliberate indifference " is found if the school administrator "respond[s] to known peer harassment in a manner that is ... clearly unreasonable." <u>Id</u>. Citing to <u>Davis v. Monroe County Bd. of Educ.</u>, 526 U.S. 629, 649 (1999).

Alexandria alleges that Cotta violated Alexandria's Equal Protection rights by subjecting her to sexual harassment on the basis of her gender. Based on Alexandria's allegations, it appears that Cotta harassed both males and females. Alexandria alleges, that "almost all of the four female and two male students who were interviewed by OCR (not including Alexandria) reported that they themselves had experienced some form of unwanted physical contact from Defendant Rick Cotta...." See FAC ¶50. A male student told OCR that Cotta sometimes touched his back,

and that he told Cotta to get his hands off of him.  Id.  Alexandria alleges that prior to the date she was first sexually harassed by Cotta, Cotta had engaged in prior misconduct toward, or sexual harassment of, students, and particularly female students.  See FAC ¶17.  In order to establish a §1983 Equal Protection violation, Alexandria must show that Cotta discriminated against her as a member of an identifiable class (i.e. gender).  Flores, 324 F.3d 1130, 1135 (9th Cir. 2003).  Since, it appears that Cotta harassed both males and females, Alexandria's Equal Protection claim fails as to Cotta.  Alexandria is given leave to amend to clarify her Equal Protection claim against Cotta and explain how Cotta treated female students differently than male students.

II.	Fourth Claim for Relief - Civil Conspiracy (Pursuant to 42 U.S.C. §1983)

### Cotta's Argument

Cotta argues that Alexandria's fourth claim fails because she fails to allege a "meeting of the minds," between Cotta and Individual Defendants.

### Alexandria's Opposition

Alexandria alleges that Cotta and Individual Defendants entered into a conspiracy to discriminate against her on the basis of her sex.  Alexandra alleges that Cotta and Individual Defendants agreed to "look the other way" and ignore Alexandria's complaints.

### Resolution

A plaintiff may allege a conspiracy under either 42 U.S.C. §1983 or 42 U.S.C. §1985.  See Dixon v. City of Lawton, 898 F.2d 1443, 1449, n.6 (10th Cir. 1990); Klingele v. Eikenberry, 849 F.2d 409, 413 (9th Cir. 1988); Cohen v. Norris, 300 F.2d 24, 27-28 (9th Cir. 1962); Hopper v. Hayes, 573 F. Supp 1368, 1371 (D. Idaho 1983).  A conspiracy under 42 U.S.C. §1983 is "a conspiracy to deprive a plaintiff of a constitutional or federally protected right under color of state law."  Dixon, 898 F.2d 1443, 1449, n.6.  In order to "recover under a §1983 conspiracy theory, a plaintiff must plead and prove not only a conspiracy, but also a deprivation of rights; pleading and proof of one without the other will be insufficient."  Id.  See also Hart v. Parks, 450 F.3d 1059,

1071 (9th Cir. 2006). The "essence of a §1983 claim is the deprivation of the right rather than the conspiracy." Dixon, 898 F. 3d at 1449. Unlike a conspiracy under 42 U.S.C. §1985, a conspiracy under 42 U.S.C. §1983 does not require a plaintiff to prove a racial or class based animus. See Dixon, 898 F.2d at 149, n.6; Klingele, 849 F.3d at 413.

"To establish a conspiracy, a plaintiff must demonstrate the existence of an agreement or 'meeting of the minds' to violate constitutional rights." Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1301 (9th Cir. 1999); Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002). "The defendants must have, by some concerted action, intend[ed] to accomplish some unlawful objective for the purpose of harming another which results in damage." Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1301 (9th Cir. 1999). This agreement or meeting of the minds may be inferred on the basis of circumstantial evidence, such as the actions of the defendants. See Mendocino County, 192 F.3d at 1301. A showing that defendants committed acts that "are unlikely to have been undertaken without an agreement" may support the inference of a conspiracy. Id. Conclusory allegations of conspiracy, however, are not enough to support a §1983 conspiracy claim. See Burns v. County of King, 883 F. 2d 819, 821 (9th Cir. 1989). "[A] conclusory allegation of agreement at some unidentified point does not supply adequate facts to show illegality." Twombly, 127 S.Ct. At 1966. A plaintiff must plead "enough factual matter (taken as true) to suggest that an agreement was made." Id. at 1965. Allegations that identify "the period of the conspiracy, the object of the conspiracy, and certain other actions of the alleged conspirators taken to achieve that purpose," Marchese v. Umstead, 110 F. Supp.2d 361, 371 (E.D. Pa. 2000), and allegations that identify "which defendants conspired, how they conspired and how the conspiracy led to a deprivation of his constitutional rights," Harris v. Roderick, 126 F.3d 1189, 1196 (9th Cir. 1997), both have been held to be sufficiently particular to properly allege a conspiracy.

In the present case, Alexandria alleges that Cotta and Individual Defendants entered into a

13

conspiracy to discriminate against her on the basis of her sex.  As described above, it appears that Cotta harassed both males and females.  Therefore, the Court is unclear as to how Cotta conspired to violate Alexandria's Equal Protection rights.  Alexandria is given leave to amend to explain how Cotta treated females differently than males.  Accordingly, Cotta's Motion to Dismiss the §1983 conspiracy claim is granted with leave to amend.

III.   <u>Fifth Claim for Relief - Civil Conspiracy (Pursuant to 42 U.S.C. §1985(3) and Failure to Prevent (Pursuant to 42 U.S.C. §1986)</u>

<u>Cotta's Argument</u>

Cotta argues that Alexandria's Fifth Claim fails because she fails to allege that a conspiracy existed, its purpose, an act to further that purpose, or damages caused by the conspiracy.

<u>Alexandria's Opposition</u>

Alexandria argues that Cotta conspired to violate her Equal Protection rights.  Alexandria alleges that Cotta was aware of the conspiracy, had the power to protect Alexandria from the conspiracy, and failed to do so.

<u>Resolution</u>

<u>Civil Conspiracy (Pursuant to 42 U.S.C. §1985(3)</u>

To successfully bring a cause of action under §1985(3), a plaintiff must prove three elements: "(1) the existence of a conspiracy to deprive the plaintiff of equal protection of the laws; (2) an act in furtherance of the conspiracy and (3) a resulting injury."  <u>Addisu v. Fred Meyer, Inc.</u>, 198 F.3d 1130, 1141 (9th Cir. 2000); <u>see also</u> <u>Sever v. Alaska Pulp Corp.</u>, 978 F.2d 1529, 1536 (9th Cir. 1992).  Furthermore, the plaintiff must identify the deprivation of a legally protected right motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  <u>Griffith v. Breckenridge</u>, 403 U.S. 88, 102 (1971). Section 1985(3) applies to conspiracies motivated by gender-based animus against women.  <u>Life Ins. Co. of N. Am. v. Reichardt</u>, 591 F.2d 499, 505 (9th Cir.1979).

Here, Alexandria has not alleged sufficient facts, showing that Cotta conspired to deprive

her of her constitutional Equal Protection rights and was motivated by gender-based animus. Accordingly, Cotta's Motion to Dismiss Alexandria's §1985(3) claim is granted with leave to amend.

Failure to Prevent (Pursuant to 42 U.S.C. §1986)

"Section 1986 authorizes a remedy against state actors who have negligently failed to prevent a conspiracy that would be actionable under §1985." Cerrato v. San Francisco Cmty. Coll. Dist., 26 F.3d 968, 971, n.7 (9th Cir. 1994). A viable § 1986 claim is dependent on the existence of a §1985 claim. McCalden v. California Library Assoc., 955 F.2d 1214, 1223 (9th Cir. 1992); Karim-Panahi v. Los Angles Police Department, 839 F.2d 621, 626 (9th Cir. 1988). In the present matter, Alexandria has not stated a valid §1985 claim against Cotta. Accordingly, Cotta's Motion to Dismiss Alexandria's §1986 claim is granted with leave to amend.

## ORDER

Accordingly, IT IS HEREBY ORDERED THAT:

1. Cotta's Motion to Dismiss Alexandria's Second Claim for Relief - Title IX is GRANTED without leave to amend;
2. Cotta's Motion to Dismiss Alexandria's Second Claim for Relief - 42 U.S.C. §1983 based on an Equal Protection Violation is GRANTED with leave to amend;
3. Cotta's Motion to Dismiss Alexandria's Fourth Claim for Relief- 42 U.S.C. §1983 Conspiracy is GRANTED with leave to amend;
4. Cotta's Motion to Dismiss Alexandria's Fifth Claim for Relief- 42 U.S.C. §1985(3) Conspiracy and 42 U.S.C. §1986 Failure to Prevent is GRANTED with leave to amend; and
5. Alexandria may file an amended complaint consistent with this order and Rule of Civil Procedure 11 on or by August 30, 2010.

IT IS SO ORDERED.

Dated:   August 6, 2010

CHIEF UNITED STATES DISTRICT JUDGE

15