1
2
3
4
5
6
7
8
9

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

10
11
12
13
14
15
16

| | |
|---|---|
| ALEXANDRIA DYESS, by and through her Guardian ad Litem, ANDREA DYESS, ) ) | NO. 1:10-CV-00166-AWI-JLT |
| Plaintiff, ) ) | ORDER ON DEFENDANTS' MOTION TO DISMISS |
| v. ) ) | Doc. Nos. 5 & 6 |
| TEHACHAPI UNIFIED SCHOOL DISTRICT, et al., ) ) ) | |
| Defendants. ) ) | |

17
18      This case was removed from Kern County Superior Court on the basis of federal question

19   jurisdiction.  Plaintiff Alexandria Dyess ("Alexandria"), through her guardian ad litem, alleges

20   five claims for relief against Tehachapi Unified School District ("TUSD") and its employees

21   Rick Cotta ("Cotta"), Ed Cheek ("Cheek"), Cary Johnson ("Johnson"), Beverly Thompson

22   ("Thompson"), Richard Swanson ("Swanson"), Ms. Skaggs ("Skaggs"), Dan Ingraham

23   ("Ingraham"), and Ms. Guy ("Guy").  Alexandria's claims stem from conduct by her former

24   teacher Cotta and the defendants' reaction to Cotta's conduct.  Defendants Cheek, Johnson,

25   Thompson, Swanson, Skaggs, Ingraham, and Guy (collectively, "Individual Defendants") move

26   to dismiss several causes of action alleged against them under Fed. R. Civ. P. 12(b)(6).  For the

27   reasons that follow, Individual Defendants' motion will be granted in part and denied in part.

28

**BACKGROUND**

From the FAC,[1] during the 2007-2008 school year: Alexandria was a student at Tehachapi High School ("the School"), Johnson was the principal of the School, Cheek and Thompson were Vice Principals of the School, Swanson was the Superintendent of TUSD, Cotta was a teacher, (who apparently taught Introduction to Agriculture) at the School, Skaggs, Ingraham, and Guy, were teachers at the School.  See FAC ¶¶4-15.

In December 2007, during Cotta's Introduction to Agriculture class, Alexandria was checking her grades at the back of the classroom, when Cotta approached Alexandria and placed his right hand across the front of Alexandria's body to her lower left hip and his left hand on her lower right hip, spun her around, and pulled Alexandria against his body.  See FAC ¶24.  Cotta then placed his forehead on her forehead.  Id.  Alexandria attempted to step back, and Cotta forcefully pulled her against his body.  Alexandria pushed Cotta away and Cotta stated:  "You touch me like that again and I will send you to the office for assault on a teacher."  Id.

In January 2008, during Cotta's Introduction to Agriculture class, Cotta grabbed Alexandria from behind, placed his arms around her, under her arms, and placed his hands on her chest and breasts.  Id. at ¶25.  Alexandria turned around, pushed him away, and said "Stop, how many times do I have to tell you not to touch me," or words to that effect.  Cotta became visibly angry but eventually retreated to his office.  Id.

Later during January 2008, Cotta's Introduction to Agriculture class was canceled and Alexandria was transferred to Guy's Earth Science class.  Id. at ¶26.  Cotta would "hang out" in Guy's Earth Science class "in order to view, ogle and leer at Plaintiff."  Id.  Alexandria alleges that Guy did not report Cotta's conduct to law enforcement, TUSD, the School, or any other

---

[1]Since this is a Rule 12(b)(6) motion, the Court accepts as true the factual allegations in the FAC.  See Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999).

1   teacher.

2       Later in January 2008, Alexandria attended an event for the School's Future Farmers of

3   America ("FFA"). Id. at 27. Approximately one day prior to the FFA trip, Alexandria, Brittney

4   Ryan ("Ryan"), Brooke Broyles ("Broyles"), Amanda Ward ("Ward"), went to Ingraham and

5   requested that they ride with him because they were uncomfortable with Cotta. Id. During a stop

6   at an ice cream parlor after the event, Cotta took photographs of only the female FFA

7   participants, including Ryan, Broyles, Ward, and Alexandria. Cotta "photographed the girls

8   when they were bending over, when they were eating cherries, and under the table." Id. The

9   females students asked Cotta to stop taking the photographs. Id. Cotta became angry and

10  refused to stop taking the photographs. Id. Cotta then said that he wanted the females to ride in

11  his van with him. Id. The female students instead rode with Ingraham, another teacher who was

12  accompanying the trip. Id. Ingraham witnessed Cotta's behavior and did not report Cotta's

13  conduct and did not report Alexandria and the other female students' concerns of Cotta to either

14  TUSD, the School, or any teacher. Id.[2]

15      During February 2008, Alexandria was in a School office that Cotta shared with

16  Ingraham. Id. at ¶28. Cotta entered the office, grabbed, and squeezed Alexandria's arm, and

17  shook her violently, leaving a bruise on her arm  Id. Cotta again tried to touch Alexandria and

18  Alexandria said "Don't touch me, don't you get it, I'm not comfortable around you." Id.

19  Ingraham witnessed Cotta's actions and did not report Cotta's conduct to anyone. Id.

20      On or about February 13, 2008, James Dyess[3], Alexandria's father, saw the bruise on

21  Alexandria's arm and asked how she got the bruise. Id. at ¶30. Alexandria told her father for the

22  first time that Cotta had grabbed and bruised her arm. Id. That afternoon, James asked Cheek to

23

24          [2]Johnson later confirmed and corroborated that Cotta had taken photographs of the female
    FFA students but did not investigate whether the photographs had been taken in an inappropriate
25  manner or whether Cotta had asked just the girls to ride in his van. See FAC ¶28.

26          [3]James is employed as a custodian at the School. See FAC ¶5.

27

28                                              3

1   investigate the incident and Cheek said that he would look into it.  Id.

2       On or about, February 14, 2008, James asked Cheek if had spoken to Cotta about the

3   bruised arm incident.  Id. at ¶31.  Cheek said that he had not, but would do so "later that

4   evening."  Id.  On or about February 19, 2008, Cheek informed Alexandria that she was

5   suspended from school for the rest of the week because of a purported incident the prior week,

6   when Alexandria had allegedly argued with two other students.  Id. at ¶32.  Later that day, James

7   asked Cheek about the suspension and whether the other two students had been suspended.

8   Cheek told James that it was none of his business.  Id.  James asked Cheek if he had spoken to

9   Cotta.  Id.  Cheek said that he had not.  Id.  James asked to speak with Johnson and Cheek told

10  James that Johnson was gone for the day.  Id.

11      On or about February 20, 2008, James spoke with Johnson and told him about

12  Alexandria's suspension.  Id. at ¶33.  Johnson responded that he had told Cheek to suspend all

13  three students and asked Cheek if he had done so.  Id.  Cheek said "not yet."  Id.  James then told

14  Johnson that Alexandria had told him about several incidents of sexual harassment involving

15  Cotta.  Id.  The FAC alleges that James told Cheek about the sexual harassment but that Cheek

16  had not spoken to Cotta yet.[4]  Id.  Johnson told James that Alexandria needed to fill out a

17  complaint form against Cotta.  Id.   Later that day, James turned in the completed form to Cheek.

18  Id.  James told Johnson that he had just given the form to Cheek.  Id.  Johnson said that he would

19  look into it and get back to James.  Id.

20      On or about April 4, 2008, James had not heard anything about the complaint against

21  Cotta.  Id. at ¶34.  James emailed Johnson to inquire about the investigation.  Id.  On or about

22  April 14, 2008, Johnson said that he had never received the complaint form but that he and

23  Cheek had spoken with Cotta and that Cotta's "story was different from [Alexandria's]".  Id. at

24  _____

25      [4]The Court is not able to find an allegation that James told Cheek about the sexual
    harassment.  There is an allegation, however, that James told Cheek about the bruised arm
26  incident.  See FAC ¶30.

27

28                                          4

¶35.

On or about April 15, 2008, James emailed Swanson and informed him that:  (1) Alexandria had submitted a complaint form against Cotta on February 20, 2008, for inappropriate touching and sexually harassing Alexandria; (2) on April 14, 2008, James emailed Johnson asking for a response; (3) on April 15, 2008, Johnson responded that he had never received the complaint form, but that he had spoken with Cotta and he had a different story than Alexandria; and (4) James requested a meeting with Swanson.  Id. at ¶36.

On or about April 16, 2008, James and Alexandria met with Swanson and told him what had happened to Alexandria and the handling of her complaint.  Id. at ¶37.  Swanson said he would respond within twenty-four hours.  Id.

On or about April 16, 2008, Alexandria met with Johnson and Thompson.  Id. at ¶38. Johnson told Alexandria that his office had lost her complaint form but had just found it.  Id. Alexandria told Johnson and Thompson about what Cotta had done to her.  Id.  Thompson told Alexandria that she was misunderstanding what Cotta had done and that Cotta was a nice man and was not going to hurt her.  Id.

On or about April 18, 2008, Johnson told James that Cotta had admitted to grabbing Alexandria and resting his forehead against her forehead.  Id. at ¶39.  Johnson said that Cotta was in a lot of trouble and that paperwork was being drawn up and that he thought the matter had already been handled.

During the week of April 21, 2008, James informed Swanson that Cotta was still on campus and was still harassing Alexandria.  Id. at ¶40.  Swanson told James that Cotta was still on campus because there was an appeals phase.  Id.  In late April 2008, James told Johnson about another incident involving Cotta and Alexandria.  Id. at ¶41.  James told Johnson that while Alexandria was passing Cotta in the hallway, Cotta raised both of his arms in the air and said "See, I'm not touching you."  Id.  Johnson said that he spoke to Cotta "who described the

5

incident very differently."  Id.

On or about May 8, 2009, James contacted the United States Department of Education, Office of Civil Rights ("OCR") about the sexual harassment.  Id. at ¶44.  On or about May 27, 2008, James sent an email to each member of the School Board of TUSD and informed them about the sexual harassment and the failure of defendants to appropriately respond to the sexual harassment.  Id. at ¶45.  James did not receive a response to his email.  Id.

After James brought the sexual harassment to the further attention of TUSD and the School, teachers and other employees of TUSD and/or the School, including but not limited to Defendant Skaggs, said sexually discriminatory and harassing statements to Alexandria, including "Don't hug your students around Dyess or they will accuse you of sexual assault."  Id. at ¶46.  Teachers and employees made sexually harassing comments that Alexandria wore "low cut tops."  Id.  Alexandria was subjected to repeated student-on-student sexual harassment, including statements that Alexandria was a "whore," "a slut," that she "asked for it," and that she led [Cotta] on."  Id. at ¶47.

On July 30, 2009, the OCR issued a letter that stated that it had determined that there was sufficient evidence to support a conclusion that Alexandria was subjected to sexual harassment by Cotta and that TUSD had failed to respond appropriately and effectively to the notice of harassment.  Id. at ¶49.  The OCR stated that the evidence demonstrated a pattern of sexual harassment that was sufficiently serious to create a hostile environment for female students, including Alexandria, in violation of Title IX, and that TUSD's response to notice of harassment was not in compliance with Title IX.  Id.  The OCR investigation additionally determined, and Alexandria alleges, that "almost all of the four female and two male students who were interviewed by OCR (not including Alexandria) reported that they themselves had experienced some form of unwanted physical contact from Defendant Rick Cotta...."  See FAC ¶50.  A male student told OCR that Cotta sometimes touched his back, and that he told Cotta to get his hands

6

1  off of him.  Id.

2   Alexandria filed this lawsuit in Kern County Superior Court on November 6, 2009.

3  Defendants removed on February 2, 2010.  In her FAC, Alexandria alleges the following claims

4  for relief: (1) Failure to prevent teacher-on-student sexual harassment and student-on-student

5  sexual harassment in violation of Title IX of the Education Amendments Act ("Title IX") against

6  TUSD; (2) Violation of Equal Protection Clause of the Fourteenth Amendment and Title IX

7  against Cotta and Individual Defendants, in their individual capacities; (3) Excessive Use of

8  Force in violation of the Fourth Amendment against Cotta, Cheek, Johnson, Thompson, and

9  Swanson; (4) Civil Conspiracy under 42 U.S.C. Section 1983 ("§1983") against Individual

10  Defendants; and (5) Conspiracy under 42 U.S.C. Section 1985(3) ("§1985(3)") and Failure to

11  Prevent under 42 U.S.C. Section 1986 ("§1986") against Individual Defendants.

12   On February 22, 2010, Individual Defendants filed a Motion to Dismiss the FAC for

13  failure to state a claim pursuant to Rule 12(b)(6) and a Motion to Strike certain portions of the

14  FAC pursuant to Rule 12(f).[5]

15   On March 22, 2010, Alexandria filed an opposition to Individual Defendants' Motion to

16  Dismiss and Motion to Strike.  On March 29, 2010, Individual Defendants filed a reply.

17  **GENERAL LEGAL FRAMEWORK**

18  **Rule 12(b)(6)**

19   Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the

20  plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A

21

22

23   [5]Individual Defendants seek to strike paragraphs 49 and 50 of the FAC pursuant to Rule
   12(f).  These paragraphs contain allegations of the OCR investigation. Alexandria has adopted
   the OCR's findings and incorporated them by reference.  See FAC ¶50.  Defendants argue that if

24  the OCR allegations are asserted for their truth, then the allegations are redundant and should be
   stricken.  The Court finds that Alexandria is seeking to assert these paragraphs for their truth.

25  Individual Defendant's argument has no merit, however, because the OCR paragraphs contain
   additional facts and allegations that are not contained in the remainder of the FAC.  Accordingly,

26  Individual Defendants' Motion to Strike is denied.

27

28

dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. <u>Johnson v. Riverside Healthcare Sys.</u>, 534 F.3d 1116, 1121 (9th Cir. 2008); <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001). In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. <u>Marceau v. Blackfeet Hous. Auth.</u>, 540 F.3d 916, 919 (9th Cir. 2008); <u>Vignolo v. Miller</u>, 120 F.3d 1075, 1077 (9th Cir. 1999). The Court must also assume that general allegations embrace the necessary, specific facts to support the claim. <u>Smith v. Pacific Prop. and Dev. Corp.</u>, 358 F.3d 1097, 1106 (9th Cir. 2004); <u>Peloza v. Capistrano Unified Sch. Dist.</u>, 37 F.3d 517, 521 (9th Cir. 1994). But, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." <u>In re Gilead Scis. Sec. Litig.</u>, 536 F.3d 1049, 1056-57 (9th Cir. 2008); <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001). Although they may provide the framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949-50 (2009); <u>see also</u> <u>Warren v. Fox Family Worldwide, Inc.</u>, 328 F.3d 1136, 1139 (9th Cir. 2003). Furthermore, Courts will not assume that plaintiffs "can prove facts which [they have] not alleged, or that the defendants have violated . . . laws in ways that have not been alleged." <u>Associated General Contractors of California, Inc. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983). As the Supreme Court has explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). Thus, to "avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that

is plausible on its face." Iqbal, 129 S.Ct. at 1949; see Twombly, 550 U.S. at 570; see also Weber v. Department of Veterans Affairs, 521 F.3d 1061, 1065 (9th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949.

> The plausibility standard is not akin to a 'probability requirement,' but it asks more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'
> . . .
>
> Determining whether a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.

Iqbal, 129 S.Ct. at 1949-50.  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

If a Rule 12(b)(6) motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc).  In other words, leave to amend need not be granted when amendment would be futile. Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).

## ANALYSIS

I.   Second Claim for Relief - Violation of Equal Protection Clause of the Fourteenth Amendment and Title IX[6]

---

[6]Alexandria's First Claim for Relief is only brought against Defendant TUSD. Defendants Cheek, Johnson, Thompson, and Swanson are not challenging the Third Claim for Relief.

1    Title IX

2    Defendants' Argument

3        Individual Defendants argue that Alexandria's Title IX claim fails against them because

4    Title IX does not authorize suits against school officials or teachers.

5    Alexandria's Opposition

6        Alexandria appears to concede that a Title IX action is not cognizable against school

7    officials or teachers and focuses her opposition on her Equal Protection claim.  See Alexandria'

8    Opposition at page 5.[7]

9    Resolution

10       Although, the FAC asserts a Title IX claim against Individual Defendants, a Title IX claim

11   cannot be brought against school officials, teachers, and other individuals.  See Fitzgerald v.

12   Barnstable School Committee, 129 S. Ct. 788, 796 (2009); Davis Next Friend LaShonda D. v.

13   Monroe County Bd. of Educ., 526 U.S. 629, 641 (1999) ("The Government's enforcement power

14   may only be exercised against the funding recipient, see [20 U.S.C.] § 1682, and we have not

15   extended damages liability under Title IX to parties outside the scope of this power.").

16   Accordingly, Alexandria's Title IX claim is dismissed with prejudice as to Individual Defendants.

17       Equal Protection Claim Pursuant to U.S.C. 42 §1983 - Gender Based Discrimination

18   Defendant's Argument

19       Defendants Ingraham, Guy, and Skaggs argue that Alexandria's Equal Protection claim

20   fails against them because she does not allege any conduct on their part that would rise to the level

21

22   _____
         [7]Alexandria argues that a Title IX claim lies against Individual Defendants under the
     Equal Protection Clause of the Fourteenth Amendment.  The Court is not entirely clear as to
23   Alexandria's argument.  To the extent that Alexandria is arguing that she can assert a Title IX
     claim through the Equal Protection Clause, the Court is not persuaded.  A Title IX claim under
24   20 U.S.C. § 1681 is enforceable through an implied private right of action as discussed in the
     legal standard section.  In contrast, a constitutional Equal Protection claim can be asserted
25   through 20 U.S.C. § 1983.  See Flores v. Morgan Hill Unified Sch. Dist., 324 F.3d 1130, 1135
     (9th Cir. 2003).

26

27

28                                            10

of a constitutional violation.[8]  Defendants argue that Alexandria's allegation that these Defendants "knew or should have known" of any record of inappropriate conduct in Cotta's personnel file is conclusory.

Alexandria's Argument

Alexandria alleges that Individual Defendants acted under color of state law and discriminated against her on the basis of her sex in violation of the Equal Protection Clause and that such discrimination was either intentional or occasioned by deliberate indifference. Alexandria alleges that Individual Defendants' response to the sexual harassment was "clearly unreasonable."

Resolution

The Fourteenth Amendment provides that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amendment XIV, §1.  Denials by any person acting under color of state law are actionable under §1983.  In order to establish a §1983 equal protection violation, the plaintiff  must show that the individual defendants, acting under color of state law, discriminated against her as a member of an identifiable class and that the discrimination was either intentional or occasioned by deliberate indifference.  Flores v. Morgan Hill Unified Sch. Dist., 324 F.3d 1130, 1135 (9th Cir. 2003).  "Deliberate indifference " is found if the school administrator "respond[s] to known peer harassment in a manner that is ... clearly unreasonable."  Id.  (Citing to Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 649 (1999)).

The Court construes Alexandria's claim to be that teachers Guy, Skaggs, and Ingraham violated Alexandria's Equal Protection rights by acting with deliberate indifference to known

---

[8]Individual Defendants' Motion to Dismiss moves to dismiss Alexandria's Equal Protection claim as to Defendants Ingraham, Guy, and Skaggs.  Defendants Cheek, Johnson, Thompson, and Swanson do not appear to move to dismiss Alexandria's Equal Protection claim.  See Individual Defendant's Motion to Dismiss at page 3.

1   teacher-on-student sexual harassment.[9]   That is, these defendant teachers had knowledge that

2   Cotta was sexually harassing Alexandria and did not report the conduct to the School or any

3   administrator solely because of Alexandria's gender.[10]   The Court will now determine whether

4   Alexandria has alleged sufficient facts to support an inference of deliberate indifference or

5   intentional discrimination by Ingraham, Skaggs, and Guy.

6          As an initial matter, Alexandria alleges that all Individual Defendants "knew or should

7   have known" of any record of inappropriate conduct in Cotta's personnel file.  This conclusory

8   allegation by itself is insufficient to demonstrate deliberate indifference.  Alexandria does not

9   provide facts to support that Individual Defendants actually had knowledge of Cotta's prior

10   conduct.

11      Ingraham

12         Alexandria alleges that prior to a FFA event, she and other female students went to

13   Ingraham and requested that he drive them after the event because they felt uncomfortable with

14   Cotta.  See FAC ¶27.  Alexandria alleges that during a FFA event, Ingraham witnessed Cotta

15   taking photos of only female students, including, Alexandria, "when they were bending over,

16   when they were eating cherries, and under the table."  See FAC ¶27.  Alexandria alleges that

17   Ingraham witnessed Cotta grabbing and squeezing Alexandria's arm and shaking her violently and

---

19         [9]Alexandria also alleges that she was subjected to student-on-student harassment.  See FAC ¶47.  The FAC alleges in the First Cause of Action that TUSD violated Title IX for failing

20 to prevent teacher-on-student harassment and student-on-student harassment.  Embedded within the First Cause of Action, the FAC alleges that the Individual Defendants had knowledge of the

21 teacher-on-student and/or student-on-student harassment and failed to adequately respond and were deliberately indifferent.  See FAC ¶55.  The Court finds that these allegations are too

22 conclusory with respect to Individual Defendants' knowledge and alleged deliberate indifference to student-on-student harassment.  In further support of the Court's position, the Court notes that

23 Alexandria's opposition focuses solely on defendants' deliberate indifference to teacher-on-student harassment.  Accordingly, Alexandria fails to state a claim against Individual Defendants

24 and is given leave to amend to further develop her allegations.

25         [10]To the extent that the Court's interpretation of Alexandria's Equal Protection claim is not consistent with Alexandria's position, Alexandria may clarify her Equal Protection claim in

26 her amended complaint if she chooses to file one.

1   Alexandria telling Cotta "Don't touch me, don't you get it, I'm not comfortable around you."  <u>See</u>

2   FAC ¶29.  Alexandria alleges that Ingraham took no action to report any of the incidents to TUSD

3   or any school administrator.  The Court finds that taken together these allegations are sufficient to

4   support an inference of deliberate indifference by Ingraham of Cotta's alleged sexual harassment.

5            <u>Guy</u>

6            Alexandria alleges that Cotta would "hang out" in Guy's Earth Science class "in order to

7   view, ogle and leer at Plaintiff."  <u>Id.</u>  Alexandria alleges that Guy did not report Cotta's conduct.

8   <u>Id.</u>  Alexandria's allegations are insufficient because she does not allege that Guy had knowledge

9   of Cotta's alleged sexual harassment.  Alexandria is given leave to amend to allege facts that

10  support an inference that Guy knew that Cotta was ogling or leering at Alexandria and failed to

11  report the conduct.

12           <u>Skaggs</u>

13           Alexandria alleges that after she complained to the School about the alleged sexual

14  harassment, and after the matter became public knowledge, teachers, including, Skaggs, said

15  sexually discriminatory and harassing statements about Alexandria, including, "Don't hug your

16  students around Dyess or they will accuse you of sexual assault."  <u>See</u> FAC ¶46.  Alexandria

17  alleges that teachers commented that Alexandria "wore low cut tops."  <u>Id.</u>  Alexandria argues that

18  these comments constituted deliberate indifference to Cotta's sexual harassment and the

19  comments themselves were direct sex-based discrimination.  <u>See</u> Alexandria's Opposition at page

20  11.

21            The Court finds that the allegations against Skaggs are inadequate to support an inference

22  of deliberate indifference to Cotta's alleged sexual harassment.  Alexandria does not allege that

23  Skaggs had knowledge of Cotta's alleged sexual harassment and failed to report Cotta's conduct.

24  It appears that at best, Skaggs expressed an opinion in the abstract after Alexandria had already

25  complained to the School about Cotta's alleged sexual harassment.  Alexandria does not allege

26

27

28                                                      13

that Skaggs made the comments for purposes of preventing Alexandria from reporting the alleged sexual harassment.  Alexandria does not allege that Skaggs made the statements to TUSD or the School for purposes of encouraging TUSD or the School from taking any action with respect to the alleged harassment.  On the balance, Skagg's comments do not support an inference of deliberate indifference to Cotta's alleged sexual harassment.  Alexandria is given leave to amend to cure the deficiency.

With respect to Alexandria's allegation that Skagg's comments constituted a direct violation of Alexandria's constitutional Equal Protection rights, the Court finds that the comments are insufficient to rise to the level of a constitutional violation.  Alexandria argues that Skagg's comments minimized and belittled Cotta's sexual harassment.  See Alexandria's Opposition at page 15.  While Skagg's comments may have been offensive, the comments, as alleged, appear to be a teacher's mere opinion.  Furthermore, Skagg's stray remarks, without other evidence, do not give rise to an Equal Protection violation.  See Walnut Hill Estate Enterprises, LLC, v. City of Oroville, 2009 WL 3781038, *7 (E.D. Cal. Nov. 10, 2009) (holding stray remarks insufficient to support equal protection claim); Edington v. Yavapai County, 2008 WL 169719, *5 (D. Ariz. Jan. 15, 2008) (same); Merrick v. Farmers Ins. Group, 892 F.2d 1434, 1438 (9th Cir. 1990) ("stray remarks are insufficient to establish discrimination").  Alexandria is given leave to amend to set forth additional allegations.

II.    Fourth Claim for Relief - Civil Conspiracy (Pursuant to 42 U.S.C. §1983)

Defendants' Argument

Individual Defendants argue that Alexandria's fourth claim fails because she fails to allege any agreement or "meeting of the minds," between Individual Defendants.

Alexandria's Opposition

Alexandria alleges that Individual Defendants entered into a conspiracy to violate Alexandria's Equal Protection rights.  Alexandria alleges that Individual Defendants agreed to "look the other way" in order to protect Cotta or the School.  Alexandria argues that Individual Defendants inaction was unlikely to have been undertaken in the absence of a conspiracy.

Resolution

A plaintiff may allege a conspiracy under either 42 U.S.C. §1983 or 42 U.S.C. §1985.  See Dixon v. City of Lawton, 898 F.2d 1443, 1449, n.6 (10th Cir. 1990); Klingele v. Eikenberry, 849 F.2d 409, 413 (9th Cir. 1988); Cohen v. Norris, 300 F.2d 24, 27-28 (9th Cir. 1962); Hopper v. Hayes, 573 F. Supp 1368, 1371 (D. Idaho 1983).  A conspiracy under 42 U.S.C. §1983 is "a conspiracy to deprive a plaintiff of a constitutional or federally protected right under color of state law."  Dixon, 898 F.2d 1443, 1449, n.6.  In order to "recover under a §1983 conspiracy theory, a plaintiff must plead and prove not only a conspiracy, but also a deprivation of rights; pleading and proof of one without the other will be insufficient."  Id.  See also Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006).  The "essence of a §1983 claim is the deprivation of the right rather than the conspiracy."  Dixon, 898 F. 3d at 1449.  Unlike a conspiracy under 42 U.S.C. §1985, a conspiracy under 42 U.S.C. §1983 does not require a plaintiff to prove a racial or class based animus.  See Dixon, 898 F.2d at 149, n.6; Klingele, 849 F.3d at 413.

"To establish a conspiracy, a plaintiff must demonstrate the existence of an agreement or 'meeting of the minds' to violate constitutional rights."  Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1301 (9th Cir. 1999);  Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002). "The defendants must have, by some concerted action, intend[ed] to accomplish some unlawful objective for the purpose of harming another which results in damage."  Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1301 (9th Cir. 1999).  This agreement or meeting of the minds may be inferred on the basis of circumstantial evidence, such as the actions of the defendants.  See Mendocino County, 192 F.3d at 1301.  A showing that defendants committed acts that "are unlikely to have been undertaken without an agreement" may support the inference of a conspiracy.  Id.  Conclusory allegations of conspiracy, however, are not enough to support a §1983 conspiracy claim.  See Burns v. County of King, 883 F. 2d 819, 821 (9th Cir. 1989).  "[A] conclusory allegation of agreement at some unidentified point does not supply adequate facts to show illegality."  Twombly, 127 S.Ct. At 1966.  A plaintiff must plead "enough factual matter (taken as true) to suggest that an agreement was made."  Id. at 1965.  Allegations that identify "the

1   period of the conspiracy, the object of the conspiracy, and certain other actions of the alleged

2   conspirators taken to achieve that purpose," Marchese v. Umstead, 110 F. Supp.2d 361, 371 (E.D.

3   Pa. 2000), and allegations that identify "which defendants conspired, how they conspired and how

4   the conspiracy led to a deprivation of his constitutional rights," Harris v. Roderick, 126 F.3d

5   1189, 1196 (9th Cir. 1997), both have been held to be sufficiently particular to properly allege a

6   conspiracy.

7          In the present case, the FAC alleges that Individual Defendants entered into a civil

8   conspiracy and agreement to violate Alexandria's Equal Protection rights by discriminating

9   against her on the basis of her sex.  Specifically, Alexandria alleges that the conspiracy and

10  agreement is evidenced by the fact that Individual Defendants "aided, abetted, approved, ratified

11  and/or deliberately and knowingly failed, refused and/or refrained from intervening in or stopping

12  the fabrication and/or planting of evidence on or against Plaintiff..." See FAC ¶79.  The Court

13  finds this allegation to be confusing and unintelligible.  This allegation does not support an

14  inference of a conspiracy because Alexandria does not allege an agreement or meeting of the

15  minds among Individual Defendants for purposes of depriving Alexandria of her constitutional

16  rights.  It is unclear to the Court how a conspiracy to violate Alexandria's equal protection rights

17  could be evidenced by Individual Defendants "planting of evidence" against Alexandria.

18  Alexandria does not describe what evidence was planted against Alexandria nor how this

19  evidence is related to Alexandria's equal protection claim.

20         Alexandria further alleges that Individual Defendants conspired to be deliberately

21  indifferent to Alexandria's complaints of sexual harassment and to "look the other way" and

22  refuse to address or remedy Alexandria's complaints.  See FAC ¶80.  The FAC shows that Cotta

23  systematically sexually harassed Alexandria during the 2007-2008 school year.  The FAC alleges

24  that Individual Defendants did not report the conduct to anyone in the administration of TUSD or

25  to any School administrator, failed to act on or investigate Alexandria's complaints (see FAC

26  ¶38), and allowed Cotta to remain on campus and continue sexually harassing Alexandria (see

27  FAC ¶39).  The crux of Alexandria's conspiracy claim appears to be that various Individual

28                                              16

1  Defendants were aware of Cotta's sexual harassment and agreed to not report it and agreed to

2  ignore Alexandria's complaints because of her gender.[11]  Since this is a Rule 12(b)(6) motion, the

3  Court assumes the truth of Alexandria's allegations and views them in the light most favorable to

4  Alexandria.

5          The FAC allegations are sufficiently particular to allege a §1983 conspiracy claim for the

6  following reasons: (1) the FAC alleges that Individual Defendants conspired against Alexandria

7  for purposes of depriving her of her constitutional Equal Protection rights based on gender

8  discrimination; (2) the FAC alleges conduct done in furtherance of the conspiracy, including

9  allegations that Individual Defendants were aware of Cotta's sexual harassment and Individual

10  Defendants either failed to report the harassment and/or failed to address or remedy Alexandria's

11  complaints after the issues with Cotta were brought to their attention; (3) the FAC alleges how

12  Alexandria was harmed; (4) the FAC identifies the general time period for the conspiracy; and (5)

13  the FAC alleges the individuals who were involved in the conspiracy.

14          Moreover, the meeting of the minds requirement can be inferred on the basis of

15  circumstantial evidence, such as actions of the defendants.  See Mendocino County, 192 F.3d at

16  1301.  Here, Alexandria has alleged that at least seven individuals were aware of the sexual

17  harassment at the time it occurred and/or were aware of her complaints of harassment and acted in

18  conformity to violate Alexandria's constitutional rights by not reporting the harassment and/or by

19  not addressing her complaints.  Accordingly, the Court finds the allegations are sufficiently

20  particular to allege a conspiracy under 42 U.S.C. §1983 for purposes of a 12(b)(6) motion.  See

21  San Diego Police Officers' Ass'n v. Aguire, 2005 U.S. Dist. Lexis, 38166, *26-*27 (S.D. Cal.

22  2005); Slade v. Gates, 2002 U.S. Dist. LEXIS 20402, *7-*9 (C.D. Cal. 2002).  Therefore,

23  Individual Defendants' motion to dismiss this claim is denied.

24  III.    Fifth Claim for Relief - Civil Conspiracy (Pursuant to 42 U.S.C. §1985(3)) and Failure to
           Prevent (Pursuant to 42 U.S.C. §1986)

25

26  ─────────────

27      [11]To the extent that Alexandria does not view her conspiracy claim to be as the Court
    construes it, Alexandria may clarify her claim in her amended complaint if she chooses to file
    one.

28                                          17

1    Defendants' Argument

2        Individual Defendants argue that Alexandria's fifth claim fails because she fails to allege

3    that a conspiracy existed, its purpose, an act to further that purpose, or damages caused by the

4    conspiracy.

5    Alexandria's Opposition

6        Alexandria argues that Individual Defendants conspired to violate her Equal Protection

7    rights.  Alexandria alleges that Individual Defendants were aware of the conspiracy, had the

8    power to protect Alexandria from the conspiracy, and failed to do so.

9    Resolution

10    Civil Conspiracy (Pursuant to 42 U.S.C. §1985(3)

11        To successfully bring a cause of action under §1985(3), a plaintiff must prove three

12    elements: "(1) the existence of a conspiracy to deprive the plaintiff of equal protection of the laws;

13    (2) an act in furtherance of the conspiracy and (3) a resulting injury."  Addisu v. Fred Meyer, Inc.,

14    198 F.3d 1130, 1141 (9th Cir. 2000); see also Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536

15    (9th Cir. 1992).  Furthermore, the plaintiff must identify the deprivation of a legally protected

16    right motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory

17    animus behind the conspirators' action."  Griffith v. Breckenridge, 403 U.S. 88, 102 (1971).

18    Section 1985(3) applies to conspiracies motivated by gender-based animus against women.  Life

19    Ins. Co. of N. Am. v. Reichardt, 591 F.2d 499, 505 (9th Cir.1979).

20        Here, Alexandria has alleged sufficient facts, showing that Individual Defendants

21    conspired to deprive her of her constitutional Equal Protection rights on the basis of her gender.

22    Accordingly, Individual Defendants' motion to dismiss Alexandria's §1985(3) claim is denied for

23    the same reasons that her §1983 claim was denied.

24    Failure to Prevent (Pursuant to 42 U.S.C. §1986)

25        "Section 1986 authorizes a remedy against state actors who have negligently failed to

26    prevent a conspiracy that would be actionable under §1985."  Cerrato v. San Francisco Cmty.

27    Coll. Dist., 26 F.3d 968, 971, n.7 (9th Cir. 1994).  A viable § 1986 claim is dependent on the

28                                          18

existence of a §1985 claim.  <u>McCalden v. California Library Assoc.</u>, 955 F.2d 1214, 1223 (9th Cir. 1992).  In the instant matter, Alexandria has stated a valid §1985 claim and alleged that Individual Defendants were aware of the conspiracy, were in a position to prevent the conspiracy, and failed to prevent the conspiracy.  Thus, Alexandria has stated a viable §1986 action.  <u>See Karim-Panahi v. Los Angles Police Department</u>, 839 F.2d 621, 626 (9th Cir. 1988).  Accordingly, Individual Defendants' motion to dismiss Alexandria's §1986 claim is denied.

### **ORDER**

Accordingly, IT IS HEREBY ORDERED THAT:

1. Individual Defendants' Motion to Dismiss Alexandria's Second Claim for Relief - Title XI is GRANTED without leave to amend;

2. Individual Defendants' Motion to Dismiss Alexandria's Second Claim for Relief - §1983 based on an Equal Protection Violation is GRANTED as to Skaggs and Guy with leave to amend and DENIED as to Ingraham;

3. Individual Defendants' Motion to Dismiss Alexandria's Fourth Claim for Relief- §1983 Conspiracy is DENIED;

4. Individual Defendants' Motion to Dismiss Alexandria's Fifth Claim for Relief- §1985(3) Conspiracy and §1986 Failure to Prevent is DENIED; and

5. Alexandria may file an amended complaint consistent with this order and Rule of Civil Procedure 11 on or by August 30, 2010.

IT IS SO ORDERED.

Dated:  ___August 6, 2010___                    _____

CHIEF UNITED STATES DISTRICT JUDGE